1
ANDRÉ BIROTTE JR.
United States Attorney
2
ROBERT E. DUGDALE
Assistant United States Attorney
3
Chief, Criminal Division
JAMES M. LEFT (Cal. SBN: 173382)
4
Special Assistant United States Attorney
General Crimes Section
5
    1200 United States Courthouse
    312 North Spring Street
6
    Los Angeles, California 90012
    Telephone: (213) 894-0511
7
    Facsimile: (213) 894-0141
    Email: jim.left@usdoj.gov
8

Attorneys for Plaintiff
9
United States of America

10

                UNITED STATES DISTRICT COURT
11

        FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13
UNITED STATES OF AMERICA,        ) CR No. 11-436-MRW
                                 )
14
         Plaintiff,              ) **GOVERNMENT'S OPPOSITION TO**
                                 ) **DEFENDANTS' MOTION TO SUPPRESS**
15
         v.                      ) **EVIDENCE; DECLARATION OF LEROI**
                                 ) **O'BRIEN; DECLARATION OF CRAIG**
16
HUGO RENE BAQUIAX,               ) **PORTER; EXHIBITS**
JOEL CIRILO SOSA HERNANDEZ,      )
17
                                 ) STATUS CONFERENCE AND
         Defendants.             ) EVIDENTIARY HEARING:
18
                                 ) Oct. 3, 2011, at 3:00 p.m.
                                 )
19
                                 )
                                 )
20
                                 )
                                 )
21

22
     Plaintiff United States of America, by and through its
23
counsel of record, the United States Attorney for the Central
24
District of California, hereby files its opposition to
25
defendants' motion to suppress evidence.
26
//
27
//
28
//

1      The government's opposition is based upon the attached

2   memorandum of points and authorities, the files and records in

3   this case, and any other evidence or argument that the Court may

4   wish to consider during the next scheduled hearing.

5   DATED: September 20, 2011        Respectfully submitted,

6                                    ANDRÉ BIROTTE JR.
                                     United States Attorney
7
                                     ROBERT E. DUGDALE
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9


10                                   _____/s/_____
11                                   JAMES M. LEFT
                                     Special Assistant United States
12                                   Attorney

13                                   Attorneys for Plaintiff
                                     United States of America

**TABLE OF CONTENTS**

**Page:**

Table of Authorities  . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES  . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

II.   RELEVANT FACTS OF THE CASE . . . . . . . . . . . . . 2

      A.   LAPD INVESTIGATION OF THE 907 CLUB . . . . . . . 2

      B.   THE LAPD SEARCH WARRANT . . . . . . . . . . . . 4

      C.   EXECUTION OF THE LAPD SEARCH WARRANT . . . . . . 5

      D.   INITIAL ICE INTERVIEWS OF THE FEMALE EMPLOYEES . . . 6

      E.   TRANSFER OF DOCUMENTS FROM LAPD TO ICE . . . . . . 7

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 8

      A.   DEFENDANTS FAILED TO ESTABLISH THAT THEY HAVE
           STANDING TO CHALLENGE THE LAPD SEARCH WARRANT . . . . 8

           1.   DEFENDANTS FAILED TO ESTABLISH STANDING ON
                PROCEDURAL GROUNDS . . . . . . . . . . . . . 9

           2.   DEFENDANTS FAILED TO ESTABLISH STANDING ON
                SUBSTANTIVE GROUNDS . . . . . . . . . . . . 10

      B.   DEFENDANTS DID NOT HAVE A EXPECTATION OF PRIVACY
           AS TO THE FALSE IDENTIFICATION DOCUMENTS SEIZED
           AT THE 907 CLUB . . . . . . . . . . . . . . . . 13

      C.   DEFENDANTS' CLAIM THAT THE SEARCH WARRANT APPLICATION
           DID NOT ESTABLISH PROBABLE CAUSE MUST FAIL . . . . 13

           1.   DEFENDANTS' CLAIM MUST FAIL ON PROCEDURAL
                GROUNDS . . . . . . . . . . . . . . . . . . 13

           2.   DEFENDANTS' CLAIM MUST FAIL ON SUBSTANTIVE
                GROUNDS . . . . . . . . . . . . . . . . . . 14

      D.   THE SEARCH WARRANT WAS NOT OVERLY BROAD . . . . . . 17

      E.   LAPD OFFICERS DID NOT EXCEED THE SCOPE OF THE
           WARRANT  . . . . . . . . . . . . . . . . . . . . 18

      F.   LAPD OFFICERS COULD HAVE SEIZED THE EMPLOYMENT
           APPLICATIONS UNDER THE PLAIN VIEW DOCTRINE . . . . 20

i

### TABLE OF CONTENTS (CONT'D)

**Page:**

G.    THE EMPLOYMENT APPLICATIONS AND OTHER DOCUMENTS
      FROM THE 907 CLUB ARE ALSO ADMISSIBLE AS
      INEVITABLE DISCOVERY  . . . . . . . . . . . . . .  22

H.    LAPD OFFICERS PROPERLY TURNED OVER THE 907 CLUB
      MATERIALS TO ICE PURSUANT TO ADMINISTRATIVE AND
      GRAND JURY SUBPOENAS  . . . . . . . . . . . . . .  23

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . .  26

ii

**TABLE OF AUTHORITIES**

**Page(s):**

**FEDERAL CASES**

Andresen v. Maryland,
427 U.S. 463 (1976) . . . . . . . . . . . . . . . 19

Hell's Angels Motorcycle Corp. v. McKinley,
360 F.3d 930 (9th Cir. 2004) . . . . . . . . . . 24, 25

Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt
County,
542 U.S. 177 (2004) . . . . . . . . . . . . . . . 13

Horton v. California,
496 U.S. 128 (1990) . . . . . . . . . . . . . 21, 22

INS v. Delgado,
466 U.S. 210 (1984) . . . . . . . . . . . . . . . 13

Illinois v. Gates,
462 U.S. 213 (1983) . . . . . . . . . . . . . . . 14

Kentucky v. King,
131 S. Ct. 1849 (2011) . . . . . . . . . . . 21, 22

Mancusi v. DeForte,
392 U.S. 364 (1968) . . . . . . . . . . . . . . . 10

Minnesota v. Carter,
525 U.S. 83 (1998) . . . . . . . . . . . . . . . 10

New York v. Burger,
482 U.S. 691 (1987) . . . . . . . . . . . . . . . 10

Nix v. Williams,
467 U.S. 431 (1984) . . . . . . . . . . . . . . . 22

Schowengardt v. General Dynamics Corp.,
823 F.3d 1328 (9th Cir. 1987) . . . . . . . . . . 11

Smith v. Maryland,
442 U.S. 735 (1979) . . . . . . . . . . . . . . . 10

United States v. Angulo-Lopez,
791 F.2d 1394 (9th Cir. 1986) . . . . . . . . . . 14

United States v. Burnette,
698 F.2d 1038 (9th Cir. 1983) . . . . . . . . . . 24

United States v. Cella,
568 F.2d 1266 (9th Cir. 1977) . . . . . . . . . . 11

iii

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s):**

**FEDERAL CASES**

United States v. Fannin,
        817 F.2d 1379 (9th Cir. 1987) . . . . . . . . . . . . . 14

United States v. Gamez-Orduno,
        235 F.3d 453 (9th Cir. 2000) . . . . . . . . . . . . . 11

United States v. Gillette,
        383 F.2d 843 (2d Cir. 1967) . . . . . . . . . . . . . . 9

United States v. Gonzalez,
        328 F.3d 543 (9th Cir. 2003) . . . . . . . . . . . . . 11

United States v. Hayes,
        794 F.2d 1348 (9th Cir. 1986) . . . . . . . . . . . . . 19

United States v. Holtzman,
        871 F.2d 1496 (9th Cir. 1989), overruled on other
        grounds, Horton v.California, 496 U.S. 128 (1990) . . . 25

United States v. Isaacs,
        708 F.2d 1365 (9th Cir. 1983) . . . . . . . . . . . . . 10

United States v. Johnson,
        820 F.2d 1065 (9th Cir. 1987) . . . . . . . . . . . . . 24

United States v. Kow,
        58 F.3d 423 (9th Cir. 1995) . . . . . . . . . 17, 19, 20

United States v. Leon,
        468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . 14

United States v. Lingenfelter,
        997 F.2d 632 (9th Cir. 1993) . . . . . . . . . . . . . 10

United States v. Marquez,
        367 F. Supp. 2d 600 (S.D.N.Y. 2005) . . . . . . . . . . 9

United States v. Ramirez-Perez,
        872 F.2d 1392 (9th Cir. 1989) . . . . . . . . . . . . . 22

United States v. Reilly,
        224 F.3d 986 (9th Cir. 2000) . . . . . . . . . . . . . 22

United States v.  Ruckes,
        586 F.3d 713 (9th Cir. 2009) . . . . . . . . . . . . . 22

United States v. SDI Future Health, Inc.,
        568 F.3d 684 (9th Cir. 2009) . . . . . . . . 10, 11, 12, 17

iv

1

**TABLE OF AUTHORITIES (CONT'D)**

2

**Page(s):**

**FEDERAL CASES**

3

United States v. Shyrock,
     342 F.3d 948 (9th Cir. 2003) . . . . . . . . . . . . 10

4

United States v. Silva,
     247 F.3d 1051 (9th Cir. 2001) . . . . . . . . . . 10, 13

5

United States v. Stanert,
     762 F.2d 775, amended, 69 F.2d 1410 (9th Cir. 1985) . . 14

6

7

United States v. Struckman,
     603 F.3d 731 (9th Cir. 2010) . . . . . . . . . . . . 13

8

United States v. Wardlow,
     951 F.2d 1115 (9th Cir. 1991) (per curiam) . . . . . . . 9

9

10

United States v. Washington,
     782 F.2d 807 (9th Cir. 1986) . . . . . . . . . . . . 14

11

United States  v. Washington,
     797 F.2d 1461 (9th Cir. 1986) . . . . . . 14, 17, 18, 25

12

13

United States v. Young,
     573 F.3d 711 (9th Cir. 2009) . . . . . . . . . . . . 22

14

15

**STATE CASES**

16

Pryor v. Municipal Court,
     25 Cal. 3d 238 (1979) . . . . . . . . . . . . . . 16

17

18

Wooten v. Superior Court,
     93 Cal. App. 4th 422 (4th Dist. 2001) . . . . . . . . 16

19

20

**FEDERAL STATUTES**

21

8 U.S.C. §§ 1324a(a)(2) . . . . . . . . . . . . . . . . 1

22

8 U.S.C. §§ 1324a(b)(1)(A) . . . . . . . . . . . . . 1, 7

23

8 U.S.C. §§ 1324a(f)(1) . . . . . . . . . . . . . . . . 1

24

25

**FEDERAL REGULATION**

26

8 C.F.R. § 274a.2 . . . . . . . . . . . . . . . . . . 7

27

28

### TABLE OF AUTHORITIES (CONT'D)

**Page(s):**

**STATE STATUTES**

CA Penal Code § 266h(b) . . . . . . . . . . . . . . . . . 16

CA Penal Code § 318 . . . . . . . . . . . . . . . . 15, 16

CA Penal Code § 330 . . . . . . . . . . . . . . . . . . 15

CA Penal Code § 331 . . . . . . . . . . . . . . . . . . 15

CA Penal Code § 647(a) . . . . . . . . . . . . . . . . . 16

CA Penal Code § 647(b) . . . . . . . . . . . . . . . . . 16


**LOCAL DISTRICT COURT RULE**

Criminal Rule 12-1.1 . . . . . . . . . . . . . . . . . . 9


**CITY ORDINANCE**

Los Angeles Municipal Code § 12.29 . . . . . . . . . . . 20

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### <u>I.</u>

### <u>INTRODUCTION</u>

On May 13, 2011, the government filed an information, charging defendants HUGO RENE BAQUIAX ("BAQUIAX") and JOEL CIRILO SOSA HERNANDEZ ("SOSA") with hiring and continuing to employ illegal aliens, in violation of Title 8, United States Code, Section 1324a(a)(1)(A), (a)(2), and (f)(1). On September 4, 2011, defendants filed a motion to suppress evidence that the Los Angeles Police Department ("LAPD") seized from the 907 Club during the execution of a search warrant on November 5, 2010.

As explained below, defendants' motion to suppress fails on multiple bases. Defendants failed to establish that they have standing to contest the search warrant. Defendants also failed to establish that they have an expectation of privacy as to the false identification documents seized from many of the female employees of the 907 Club.

Defendants failed to establish that LAPD officers acted in bad faith in seeking the search warrant or that there was a lack of probable cause in support of the application for the warrant. Defendants also failed to show that the search warrant was overly broad or that LAPD officers improperly seized evidence outside of the scope of the warrant. Furthermore, the LAPD could have seized a large portion of the documentation under the plain view doctrine. Even if LAPD officers acted in violation of defendants' constitutional rights, which they did not, the evidence in question is still admissible under the inevitable discovery exception to the exclusionary rule.

1    Finally, defendants claim that evidence seized should have
2    been returned to the 907 Club instead of turned over to ICE
3    pursuant to administrative and grand jury subpoenas.  This
4    argument also fails, because even if defendants had an
5    expectation of privacy as to the documents, that expectation
6    ended once the documents were lawfully in LAPD custody.

**II.**

**RELEVANT FACTS OF THE CASE**

9    The 907 Club was a "hostess club" in downtown Los Angeles
10   that generally catered to Latin American men.  (Declaration of
11   Craig Porter, at 1).  Customers paid to talk and dance with the
12   club's hostesses, many of whom were illegal aliens.  (Id.).
13   Defendants BAQUIAX and SOSA were two of the managers at the club.
14   (Id.).

15   A.   LAPD INVESTIGATION OF THE 907 CLUB

16   Beginning in June 2010, LAPD investigated the 907 Club for
17   prostitution and illegal gambling.  (Declaration of LeRoi
18   O'Brien, at 1-2).  On June 25, 2010, three LAPD officers
19   conducted an investigation to determine whether the 907 Club was
20   operating in compliance with its Conditional Use Permit.
21   (Exhibit A, LAPD search warrant and affidavit at Bates Stamped
22   7668).[1]  At that time, the officers discovered seven female
23   employees who did not possess valid State of California
24   identification cards or drivers licenses.  (Id.).  Employing
25   individuals without valid identification was a violation of the

_____

[1]  In support of their motion to suppress, defendant
attached a copy of the LAPD search warrant, which is marked as
Exhibit 1.  This copy of the warrant is incomplete, because page
7 is missing.

2

club Conditional Use Permit, condition numbers 12 and 14.  (Id.; Exhibit B, 907 Club Conditional Use Permit, at Bates Stamped 6668).  The LAPD officers then spoke with the club's management, who provided copies of identification cards for various employees.  (Exhibit A, at 7668).  These cards were not valid, because every number on the copies of the cards presented did not belong to the person listed on each card.  (Id.).

On July 22, 2010, two undercover LAPD officers entered the 907 Club and encountered a female employee, who told the officers that lewd acts and prostitution occurred at the club.  (Id. at 7669).  The employee also stated that these acts cost more than the normal hostess rate.  (Id.).  Acts of prostitution were in violation of the club's Conditional Use Permit, conditions 14 and 15.  (Exhibit B, at 6668-69).

On July 30, 2010, the same two undercover LAPD officers again entered the 907 Club, when the club was advertising the "Bikini Girls Show."  (Exhibit A, at 7669).  Inside a male restroom, one officer found used condoms on the floor.  (Id.).  The officers also observed two seated males receiving lap dances during the "Bikini Girls Show."  (Id.).  The two men were allowed to digitally penetrate the dancer's vaginas.  (Id.).  After the club's security staff collected money from these two men, two other men were allowed to digitally penetrate the women.  (Id.).

On July 30, 2010, one undercover officer observed male customers playing pool for money.  (Exhibit A, at 7669).  The officer then played in a subsequent game and lost $20.  (Id.).  This activity occurred within sight of the club's staff.  (Id. at 7669-70).  This activity was also in violation of the club's

3

Conditional Use Permit, condition number 14.  (Exhibit B, at
6668).  On August 11, 2010, four undercover officers observed
male customers gamble at the pool table, and one officer played a
pool game for money.  (<u>Id.</u> at 7670).  This activity also occurred
within sight of the club's staff.  (<u>Id.</u>).  Undercover officers
again witnessed illegal gambling at the pool tables within sight
of the club's staff on August 20, 2010, and August 25, 2010.
(<u>Id.</u>).

On November 2, 2010, LAPD officers spoke with a Confidential
Informant ("CI").  (Exhibit A, at 7671).  The CI stated that she
was hired at the 907 Club and provided false identification upon
a manager's request.[2]  (<u>Id.</u>).  While working at the club, the CI
observed the "Bikini Girls Show."  (<u>Id.</u>).  During the show,
female dancers exposed their breasts and allowed male customers
to digitally penetrate their vaginas.  (<u>Id.</u>).  The club's
security staff collected money from the men and gave it to the
cashier.  (<u>Id.</u>).

B.   <u>THE LAPD SEARCH WARRANT</u>

Based upon all the foregoing, LAPD filed an application for
a search warrant.  (<u>See</u> <u>generally</u> Exhibit A).  On November 2,
2010, a Superior Court judge issued the warrant based upon a
finding of probable cause.  (<u>Id.</u> at 7666).  The search warrant
authorized LAPD to search "[a]ll employee records maintained by
the club's management, ledgers and records with identification of
employees and work schedules."  (<u>Id.</u> at 7667).  LAPD was also
authorized to search electronic storage devices for "records of

---

[2] For a more complete description of the hiring of the CI,
see pages 6 to 14 of the affidavit in support of the complaint.

4

payment regarding prostitution or gambling." (Id.).  LAPD was further authorized to search the dressing rooms and lockers of the female dancers to find items "used for the purpose of prostitution." (Id.).

C.   EXECUTION OF THE LAPD SEARCH WARRANT

On November 5, 2010, LAPD officers executed the search warrant against the 907 Club.[3] (Exhibit C, LAPD investigative report, at Bates Stamped 6645).  Upon entry into the club, officers observed four female dancers wearing bikinis, and they were providing lap dances. (Id. at 6646).  This adult entertainment was in violation of the club's Conditional Use Permit, condition number 13. (Id.; Exhibit B, at 6668).  The security guards collected money from the patrons who received the lap dances, and defendant BAQUIAX managed the bikini show. (Exhibit C, at 6646).

After the location was secured, LAPD officers began to check the female employees for valid identification. (Exhibit C, at 6647).  Pursuant to the warrant, the officers also checked the employee applications on file for each employee, which contained photocopies of the identification documents used to secure employment. (Id.).  Out of approximately 85 female employees working at the 907 Club that evening, LAPD determined that 19 women used false identification documents to obtain employment. (Declaration of O'Brien, at 3-4; Exhibit C, at 6647-48, 6651).

_____

[3]  Earlier the same evening, undercover LAPD officers entered the 907 Club, where they observed male customers playing pool for money. (Exhibit C, at Bates Stamped 6644-45).  These men were arrested for illegal gambling at the same time that the officers executed the warrant. (Id.).

1   LAPD also discovered that another 58 female employees possessed

2   false identification cards, which were stored in their lockers.

3   (Exhibit C, at 6648-49, 6651).  These 77 women were arrested and

4   booked into LAPD custody.  (Declaration of O'Brien, at 4).

5       LAPD seized and booked into evidence all the fraudulent

6   identification cards, which included California identification

7   cards, resident alien cards, social security cards, and Mexican

8   identification cards.  (Exhibit D, LAPD property report, at Bates

9   Stamped 6964-68).

10      At the same time that the female employees were being

11  interviewed, LAPD also located and seized numerous business

12  records that were located in two offices at the 907 Club.[4]

13  (Declaration of O'Brien, at 4; Exhibit D, at 6963-64).  These

14  records included over 800 employment applications for the female

15  employees.  (Declaration of Porter, at 3).  These records also

16  included payroll records, time cards, daily sales sheets, and

17  bank records.  (Declaration of O'Brien, at 4).  LAPD also seized

18  a computer that was located in one of the offices.  (Id.).

19  D.   INITIAL ICE INTERVIEWS OF THE FEMALE EMPLOYEES

20      Following the arrest of the female employees, several ICE

21  agents interviewed these women.  (Declaration of Porter, at 3-4).

22  At least 40 women admitted that they did not have valid

23  identification documents.  (Id. at 4).  These women also admitted

24  that the mangers of the 907 Club, including defendants BAQUIAX

25  and SOSA, hired them even though the managers knew the women did

26

27      [4]  In their motion to suppress, defendants claim that LAPD
    took all of the 907 Club's business records.  (Defendant's
    motion, at 25).  This is incorrect.  LAPD only seized about 75%
28  of the documents.  (Declaration of O'Brien, at 4).

1    not have valid identification documents or authorization to work

2    in the United States.  (Id.).

3    E.    TRANSFER OF DOCUMENTS FROM LAPD TO ICE

4         At the time LAPD executed the search warrant on November 5,

5    2010, ICE had an ongoing investigation into the 907 Club

6    concerning the hiring and continuing to employ illegal aliens.

7    (Declaration of Porter, at 2).  In furtherance of its

8    investigation, on November 8, 2010, ICE issued an administrative

9    subpoena to LAPD, requesting the Form I-9s concerning the club's

10   employees.[5]  (Exhibit E, ICE administrative subpoena, at Bates

11   Stamped 6979).

12        On December 23, 2010, a grand jury subpoena was issued on

13   behalf of ICE, requesting that LAPD produce copies of

14   identification cards seized during the execution of the search

15   warrant.  (Exhibit F, Grand jury subpoena, dated December 23,

16   2010, at Bates Stamped 6975).  The subpoena also requested that

17   the LAPD produce copies of its reports concerning the execution

18   of the search warrant and arrest of any employees.  (Id.).

19        On February 2, 2011, a second grand jury subpoena was issued

20   on behalf of ICE.  (Exhibit G, Grand jury subpoena, dated

21   February 2, 2011, at Bates Stamped 6977).  This subpoena

22   requested that LAPD produce evidence seized at the 907 Club,

23   including identification cards, employee records, and computers.

24   (Id.).

25   //

26

27        [5]  An employer is required to complete a Form I-9 as part of
     the process to verify that an employee is authorized to work in
28   the United States.  8 U.S.C. § 1324a(b)(1)(A); 8 C.F.R. § 274a.2.

On February 15, 2011, a Superior Court judge issued an order, allowing LAPD to release property in its custody to ICE. (Exhibit H, Superior Court order, at 2).[6] Later on February 15, 2011, LAPD turned over documents to ICE.[7] (Declaration of O'Brien, at 5; Declaration of Porter, at 5). If LAPD had returned the evidence to the 907 Club instead of turning it over to ICE, ICE would have sought a federal search warrant. (Declaration of Porter, at 5).

## III.

## ARGUMENT

A.  DEFENDANTS FAILED TO ESTABLISH THAT THEY HAVE STANDING TO CHALLENGE THE LAPD SEARCH WARRANT

Defendants do not submit any declarations in support of their motion to suppress. Defendants instead argue in their motion, submitted by their counsel, that "the government treats the defendants as having direct responsibility for the creation, maintenance and record-keeping for the business records and files of the Club" and that defendants had custody and control over these records. (Defendant's motion at 13-14). Thus, defendants

---

[6] Exhibit H was only recently obtained as part of the preparation for the instant opposition to the motion to suppress.

[7] In their motion to suppress, defendants at first claim that over 7,000 pages of discovery have been produced, and the vast majority, if not all, of the documents concerned business records and computer files from the 907 Club. (Defendants' motion at 4). Defendants later claim that approximately 7,500 pages of materials have been produced, all of which consisted of documents and computer files from the club. (Id. at 13). Actually, to date, the government has produced 8,562 pages of discovery. At least 1,500 pages consist of interviews of the 907 Club's female employees and redacted copies of their A-Files. The government has also produced hundreds of pages of records consisting of ICE investigative reports and related documents.

8

claim they have standing to challenge the search warrant "based entirely upon the government's allegations and theory of prosecution." (Id. at 14). As the following shows, defendants' arguments regarding standing are in error.

1.   DEFENDANTS FAILED TO ESTABLISH STANDING ON PROCEDURAL GROUNDS

Defendants' failure to submit any declarations in support of their motion violates this Court's local rules. Specifically, the local rules provide:

> A motion to suppress shall be supported by a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted. The declaration shall contain only such facts as would be admissible in evidence and shall show affirmatively that the declarant is competent to testify to the matters stated therein.

Local Criminal Rule 12-1.1 (emphasis added).

Since defendants did not submit any declarations, the Court may deny the motion to suppress on this ground alone. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (per curiam) (determining that the district court did not abuse its discretion in denying a request for an evidentiary hearing, because the defendant failed to submit a declaration in support of his motion to suppress, in violation of the local rules); see also United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (indicating that denial of the motion to suppress was appropriate, because defense counsel's affidavit in support did not allege any personal knowledge of the facts at issue); United States v. Marquez, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (reasoning that a motion to suppress must be supported by an

affidavit).

2.   DEFENDANTS FAILED TO ESTABLISH STANDING ON SUBSTANTIVE
     GROUNDS

The Court may also reject defendants' claim of standing on substantive grounds.  A person has standing to raise an alleged violation of his Fourth Amendment rights "only if there has been a violation 'as to him,' personally." United States v. SDI Future Health, Inc., 568 F.3d 684, 695 (9th Cir. 2009) (citing Mancusi v. DeForte, 392 U.S. 364, 367 (1968)).  To properly challenge a search or seizure, a defendant has the burden to prove that he had a legitimate expectation of privacy and that the search or seizure violated that expectation.  United States v. Lingenfelter, 997 F.2d 632, 636 (9th Cir. 1993); United States v. Isaacs, 708 F.2d 1365, 1367 (9th Cir. 1983).  As such, to invoke Fourth Amendment protections, a defendant must establish that a legitimate expectation of privacy by demonstrating a subjective expectation of privacy and an objectively reasonable expectation.  Smith v. Maryland, 442 U.S. 735, 740 (1979); SDI Future Health, Inc., 568 F.3d at 695; United States v. Shyrock, 342 F.3d 948, 978 (9th Cir. 2003).

A defendant may "have a legitimate expectation of privacy in a commercial area." United States v. Silva, 247 F.3d 1051, 1055 (9th Cir. 2001).  However, "[a]n expectation of privacy in commercial premises ... is different from, and [is] indeed less than, a similar expectation in an individual's home." Minnesota v. Carter, 525 U.S. 83, 90 (1998) (quoting New York v. Burger, 482 U.S. 691, 700 (1987)).

//

10

1    If a person is merely present on another's commercial

2 property, that person does not have a legitimate expectation of

3 privacy at that location.  <u>United States v. Gamez-Orduno</u>, 235

4 F.3d 453, 458 (9th Cir. 2000).  Additionally, managerial

5 authority alone is not sufficient to establish standing.  <u>SDI</u>

6 <u>Future Health, Inc.</u>, 568 F.3d at 696 (citing <u>United States v.</u>

7 <u>Cella</u>, 568 F.2d 1266, 1270, 1283 (9th Cir. 1977)).  On the other

8 hand, an individual has a reasonable expectation of privacy in

9 private work areas for that individual's exclusive use.  <u>United</u>

10 <u>States v. Gonzalez</u>, 328 F.3d 543, 548 (9th Cir. 2003);

11 <u>Schowengardt v. General Dynamics Corp.</u>, 823 F.3d 1328, 1335 (9th

12 Cir. 1987).

13    Whether a person has a reasonable expectation of privacy in

14 his work place must be analyzed on a case by case basis as there

15 are a "great variety of work environments."  <u>SDI Future Health,</u>

16 <u>Inc.</u>, 568 F.3d at 695.  In a commercial context, an individual

17 may assert standing for an office for which the individual has

18 exclusive use and for other areas upon considering the following

19 factors:

20    (1) whether the item seized is personal property or
     otherwise kept in a private place separate from other
21    work-related material; (2) whether the defendant had
     custody or immediate control of the item when officers
22    seized it; and (3) whether the defendant took
     precautions on his own behalf to secure the place
23    searched or things seized from any interference without
     his authorization.

24

25 <u>Id.</u> at 698 (footnotes omitted).  Without a personal connection or

26 exclusive use, a defendant cannot establish standing to challenge

27 the search of a workplace.  <u>Id.</u>

28 //

11

1    In the instant case, there is apparently no dispute that

2 none of the evidence seized is the personal property of either

3 defendant.  Even in their motion to suppress, defendants made no

4 claims as to whether either defendant took any precautions to

5 secure any part of the 907 Club or any evidence contained

6 therein.  Defendants instead merely assert that they have

7 standing due to their managerial status, which is an insufficient

8 ground.  SDI Future Health, Inc., 568 F.3d at 696.

9    The pertinent question in this case is whether defendant had

10 exclusive use of the offices, where employee applications,

11 payroll records, and bank records were located.  Defendants have

12 not made any assertions as to whether they had exclusive use of

13 these offices, and they cannot properly make such a claim.

14    Information obtained during interviews with the female

15 employees of the 907 Club indicate that defendants did not have

16 exclusive use of the two offices.  The female employees stated

17 that four managers, including both defendants, shared the two

18 offices.  (Declaration of Porter, at 5).  The women also stated

19 that they saw employees and customers frequently enter these

20 offices.  (Id.).  The women gave the indication that Michelle

21 Hutchinson, one of the owners of the 907 Club, used these

22 offices.  (Id.).  Thus, defendants cannot establish exclusive

23 use, and accordingly, they failed to prove that they have

24 standing to challenge the LAPD search warrant as to evidence

25 seized from the offices.

26 //

27 //

28

B.   DEFENDANTS DID NOT HAVE A EXPECTATION OF PRIVACY AS TO THE
     FALSE IDENTIFICATION DOCUMENTS SEIZED AT THE 907 CLUB

     Defendants also cannot establish standing to challenge
LAPD's seizure of the false identification documents that the
female employees possessed.  Defendants had no expectation of
privacy in these documents, because they did not personally own
the documents.  They belonged to the female employees.  The
documents were also not under defendants' exclusive control, as
they were inside the lockers of the female employees.  (Exhibit
C, at 6648-49, 6651).  Since defendants cannot assert an
expectation of privacy vicariously, they do not have standing to
challenge the seizure of the false identification documents.  See
United States v. Struckman, 603 F.3d 731, 746 (9th Cir. 2010);
Silva, 247 F.3d at 1055.[8]

C.   DEFENDANTS' CLAIM THAT THE SEARCH WARRANT APPLICATION DID
     NOT ESTABLISH PROBABLE CAUSE MUST FAIL

     1.   DEFENDANTS' CLAIM MUST FAIL ON PROCEDURAL GROUNDS

     If a defendant makes no showing that a warrant was obtained
through a law enforcement officer's "intentional or reckless
misstatements of facts or deliberate omissions tending to
mislead" the issuing court, the evidence may not be suppressed,
even if probable case for the warrant was lacking.  United States

_____

   [8]  Furthermore, while at the 907 Club, LAPD officers could
have requested identification from the female employees without
implicating any Fourth Amendment protections.  See Hiibel v.
Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S.
177, 178 (2004); INS v. Delgado, 466 U.S. 210, 216 (1984).

13

v. Washington, 797 F.2d 1461, 1468 (9th Cir. 1986)[9] (citing

United States v. Leon, 468 U.S. 897, 922-25 (1984); United States

v. Stanert, 762 F.2d 775, 781, amended, 769 F.2d 1410 (9th Cir.

1985)).

In their motion, defendants make multiple allegations

against LAPD and ICE.  However, defendants never claim that in

seeking the search warrant, the LAPD intentionally or reckless

misstated any facts.  Defendants also never claim that LAPD made

deliberate omissions as part of an effort to mislead the Superior

Court.  Therefore, on this procedural ground alone, defendants'

assertions that there was a lack or probable cause for a search

warrant must fail.

2.   DEFENDANTS' CLAIM MUST FAIL ON SUBSTANTIVE GROUNDS

A determination of probable cause must be upheld if under

the "totality of the circumstances," the issuing court had a

substantial basis for determining that probable cause existed to

support the issuance of the search warrant.  Illinois v. Gates,

462 U.S. 213, 238 (1983); United States v. Fannin, 817 F.2d 1379,

1381 (9th Cir. 1987).  Further, the issuing court's finding of a

"substantial basis" should be given great deference.  Fannin, 817

F.2d at 1381; United States v. Angulo-Lopez, 791 F.2d 1394, 1396

(9th Cir. 1986).

In the instant case, defendants assert that there was

insufficient evidence to establish probable cause for the search

---

[9]   In their motion to suppress, defendants cite to United
States v. Washington, 782 F.2d 807 (9th Cir. 1986).  (Defendants'
motion, at 21, 22).  These citations are inappropriate because
the opinion was superseded by United States v. Washington, 797
F.2d 1461, 1468 (9th Cir. 1986).

14

1   warrant.   Defendants state that "LAPD knew there was no

2   prostitution or gambling at the Club."  (Defendant's motion, at

3   12).   Defendant also state that there was "nothing more than an

4   undercover officer playing pool with a club patron for money ...

5   and the exposure of intimate body parts during lap dancing."

6   (Id.).   Later, defendants assert that the only evidence of

7   prostitution was that one occasion, LAPD officers found condoms

8   on the floor of a bathroom and saw the exposure of intimate body

9   parts.  (Id. at 16-17).

10      Defendants misstate the facts that were presented to the

11  Superior Court judge, as stated in the search warrant.   On four

12  occasions between July 30, 2010, and August 25, 2010, undercover

13  LAPD officers observed male customers playing pool for money.

14  (Exhibit A, at 7669-70).   On two of these occasions, officers

15  played in a game for money.  (Id.).

16      On all four occasions, this illegal gambling occurred within

17  sight of the club's staff.  (Id. at 7669-70).   Thus, there was

18  fair reason to believe that the 907 Club allowed and may even

19  have indirectly profited from illegal gambling within the

20  establishment.   Thus, there was probable cause to believe that

21  violations of California law occurred as a result of this

22  activity.  See CA Penal Code §§ 318 (place of prostitution or

23  illegal gambling), 330 (gambling), and 331 (owner permitting in-

24  house gambling).

25      Perhaps more importantly, there was evidence of prostitution

26  presented to the Superior Court.   On July 22, 2010, a female

27  employee told undercover LAPD officer that lewd acts and

28  prostitution occurred at the club.  (Exhibit A, at 7669).   On

15

July 30, 2010, one undercover LAPD officers found used condoms on a restroom floor, and two undercover officers observed multiple males digitally penetrate female dancer's vaginas in exchange for cash.  (Id.).  On November 2, 2010, a CI told LAPD officers that while working at the club, she saw female dancers expose their breasts and allow male customers to digitally penetrate their vaginas in exchange for cash.  (Id. at 7671).

Given the foregoing, there was ample evidence that acts of prostitution were occurring at the 907 Club.  The digital penetration of female dancers for money amounted to lewd acts and prostitution under California Penal Code Sections 647(a) (lewd acts) and 647(b) (prostitution).  See Pryor v. Municipal Court, 25 Cal.3d 238, 256 (1979) (touching of genitals for the purposes of sexual arousal or gratification amounts to a lewd or dissolute conduct under CA Penal Code § 647(a)); Wooten v. Superior Court, 93 Cal. App. 4th 422, 433 (4th Dist. 2001) (determining that CA Penal Code § 647(b) requires sexual contact between the prostitute and customer).

Since these acts of prostitution occurred in front of the club's staff and the club collected money in exchange for these acts, there was evidence of other violations of the California Penal Code relating to prostitution.  See CA Penal Code §§ 266h(b) (pimping, receipt of earnings or proceeds), and 318 (place of prostitution or illegal gambling).

Given the foregoing, there was probable cause for the issuance of the search warrant, because there was "a fair probability that contraband or evidence of a crime w[ould] be found in a particular place, based upon the totality of the

1 circumstances." <u>United States v. SDI Future Health, Inc.</u>, 568

2 F.3d 684, 703 (9th Cir. 2009) (quotation and citations omitted).

3 Accordingly, this Court should find that the Superior Court had a

4 substantial basis for determining that probable cause existed to

5 support the issuance of the search warrant.  Accordingly,

6 defendants' claim that probable cause was lacking must fail.

7 D.   <u>THE SEARCH WARRANT WAS NOT OVERLY BROAD</u>

8     A search warrant must particularly describe the items to be

9 searched and seized and must give police officers objective

10 standards to distinguish items to be seized.  <u>SDI Future Health,</u>

11 <u>Inc.</u>, 568 F.3d at 702; <u>Washington</u>, 797 F.2d at 1471-72.  A search

12 warrant is overly broad, if in listing the documents to be

13 seized, there is no indication of any alleged crime to which the

14 documents pertain.  <u>United States v. Kow</u>, 58 F.3d 423, 427 (9th

15 Cir. 1995).  However, the listing of the type of criminal

16 activity in relation to the documents sought is sufficient.

17 <u>Washington</u>, 797 F.2d at 1472 (concluding that in a search warrant

18 for business records, the "phrase 'involvement and control of

19 prostitution activity' is narrow enough to satisfy the

20 particularity requirement of the Fourth Amendment.  It

21 effectively tells the officers to seize only items indicating

22 prostitution activity.") (citations omitted).

23     In their motion to suppress, defendants claim that the

24 search warrant was overly broad, because the warrant itself

25 allowed LAPD to seize "all records, electronics and computers."

26 (Defendant's motion at 21).  Defendant also claims that since

27 there was no allegation in the search warrant that the 907 club

28 was "permeated with fraud," there was no justification for the

1   "wholesale taking" of such records.  (<u>Id.</u>).

2        Defendants again misstate what appears in the actual search

3   warrant.  The search warrant authorized LAPD to search "[a]ll

4   employee records maintained by the club's management, ledgers and

5   records with identification of employees and work schedules."

6   (Exhibit A, at 7667).  LAPD was also authorized to search

7   electronic storage devices for "records of payment regarding

8   prostitution or gambling." (<u>Id.</u>).  The warrant further allowed

9   the LAPD to search for items that are "used for the purpose of

10  prostitution." (<u>Id.</u>).

11       Given the forgoing, at a minimum, the warrant authorized a

12  search of items related to prostitution, which included any

13  records of payment to prostitutes or receipts of income derived

14  from prostitution that might be included in business records.

15  LAPD was also authorized to search for records identifying

16  employees who could be prostitutes.  This was perfectly

17  reasonable given that certain  women at the 907 Club were

18  engaging in prostitution.  Since the warrant specifically limited

19  the search to documents and other items concerning gambling or

20  prostitution, the warrant was not overly broad.  <u>See</u> <u>Washington</u>,

21  797 F.2d at 1472.

22  E.   <u>LAPD OFFICERS DID NOT EXCEED THE SCOPE OF THE WARRANT</u>

23       Defendants also assert that LAPD officers exceeded the scope

24  of the warrant, because LAPD seized a very large volume of

25  documents.  (Defendant's motion, at 30-31).  Once again,

26  defendants' argument must fail.

27       The search and seizure of large quantities of materials is

28  justified if the material is within the scope of the search

18

warrant.  <u>United States v. Hayes</u>, 794 F.2d 1348, 1355 (9th Cir. 1986).  Non-incriminatory documents may also be examined to determine whether they are among the documents that should be seized.  <u>Id.</u> at 1356 (citing <u>Andresen v. Maryland</u>, 427 U.S. 463, 482 n.11 (1976)).  Furthermore, a generalized seizure of business records may be justified if 1) there is probable cause to believe that the entire business is merely a scheme to defraud or 2) all business records are evidence of criminal activity.  <u>Kow</u>, 58 F.3d at 427.

Defendants apparently concede, at least to some extent, that LAPD was authorized to examine the 907 Club's business records off-site, because such an examination would have been too time-consuming at the club.  Thus, the taking of the large quantity of materials within the scope of the warrant for review should not be an issue.

Additionally, the warrant authorized the seizure of "[a]ll employee records maintained by the club's management, ledgers and records with identification of employees and work schedules." (Exhibit A, at 7667).  These records included 834 employment applications for 907 Club employees.  (Exhibit I, ICE Report of Investigation, at 3;[10] Declaration of Porter, at 3).  LAPD's seizure of the employment applications was entirely within the scope of the warrant.  The warrant also authorized the seizure of records related to these individual's work schedules and documents concerning payment to these individuals.  Thus, the seizure of a large quantity of documents was justified.

---

[10]  This document was only recently generated and has not yet been disclosed in discovery.

F.   <u>LAPD OFFICERS COULD HAVE SEIZED THE EMPLOYMENT APPLICATIONS
UNDER THE PLAIN VIEW DOCTRINE</u>

In reviewing the documents for evidence of prostitution, LAPD discovered evidence that the club hired women who did not possess valid identification.  Among the documents LAPD seized pursuant to the warrant were the employment applications. (Exhibit I, ICE Report of Investigation, at 3; Declaration of Porter, at 3).  These applications contained copies of California identification cards, some of which were fraudulent on their face.  (Declaration of Porter, at 3).  ICE checked the numbers on the identification against the California Department of Motor Vehicle ("DMV") database.  (Exhibit I, at 3).  These checks revealed that 269 numbers appeared valid, but 358 numbers did not exist or matched the names of other persons.  (_Id._).

The copies of identification cards attached to the employment applications indicate that the 907 Club employed women who did not possess valid identification, which was both a violation of the club's Condition Use Permit and a violation of law.  _See_ Los Angeles Municipal Code § 12.29 (violation of conditional use permit).  Other business records, such as the employee payroll records, seized pursuant to the warrant, evidenced that the club hired and continued to employ individuals without valid identification.  The club derived income from the employment of such individuals, and thus, a very large portion of the business records related to criminal activity, which served as a basis to seize and retain these documents.  _See_ Kow, 58 F.3d at 427.

//

20

1    LAPD could also have seized these documents under the plain

2  view doctrine.  Under the plain view doctrine, a law enforcement

3  officer in possession of a search warrant to search a given area

4  for particular objects may also seize other objects of an

5  incriminating character which can be seen in plain view.  Horton

6  v. California, 496 U.S. 128, 135 (1990).  Thus, for such

7  documents to be admissible, the officer must have rightful access

8  to the objects, and their incriminating nature must be

9  immediately apparent.  Id. at 136-37.

10   Inadvertence is not a requirement for an item to be seized

11  in plain view.  Kentucky v. King, 131 S. Ct. 1849, 1859 (2011);

12  Horton, 496 U.S. at 141-42.  An officer may seize evidence in

13  plain view even if the officer may be "'interested in an item of

14  evidence and fully expec[t] to find it in the course of a

15  search.'"  King, 131 S. Ct. at 1859 (quoting Horton, 496 U.S. at

16  138).

17   In this case, the search warrant authorized LAPD officers to

18  be present at the 907 Club and to search for documents within the

19  club's offices.  (Exhibit A, at 7667).  Thus, the officers had a

20  right to be in the location where documents concerning the

21  employment of individuals without valid identification could be

22  found.  Copies of identification documents could readily be

23  determined to be evidence of criminal activity due to the poor

24  qualify of the counterfeit documents or by running checks against

25  the DMV databases.  Other documents, such as employee payroll

26  records, that contain the name of the female employees who

27  possessed fraudulent identification documents would be readily

28  apparent by reading the documents.

21

1   At the time, LAPD officers executed the search warrant, LAPD

2   knew that many women at the club did not have valid

3   identification.  However, this fact did not preclude LAPD from

4   seizing documents related to employment of such women under the

5   plain view doctrine.  <u>King</u>, 131 S. Ct. at 1859; <u>Horton</u>, 496 U.S.

6   at 138.  Thus, giving all the foregoing, defendants' motion to

7   suppress must fail on the merits.

8   G.   <u>THE EMPLOYMENT APPLICATIONS AND OTHER DOCUMENTS FROM THE 907</u>

9        <u>CLUB ARE ALSO ADMISSIBLE AS INEVITABLE DISCOVERY</u>

10  Even if LAPD committed a Fourth Amendment violation that

11  warrants suppression of at least some evidence, which did not

12  occur, such evidence is still admissible under the inevitable

13  discovery exception to the exclusionary rule.  In <u>Nix v.</u>

14  <u>Williams</u>, 467 U.S. 431 (1984), the Supreme Court adopted this

15  exception to the exclusionary rule to "block setting aside

16  convictions that would have been obtained without police

17  misconduct."  <u>Id.</u> at 443 n.4 and 444.  Thus, if law enforcement

18  officers following routine procedures would have inevitably

19  uncovered the evidence at issue, the evidence should not be

20  suppressed despite any constitutional violation.  <u>United States</u>

21  <u>v. Young</u>, 573 F.3d 711, 721 (9th Cir. 2009); <u>United States v.</u>

22  <u>Ramirez-Perez</u>, 872 F.2d 1392 (9th Cir. 1989).  In order for the

23  inevitable discovery exception to apply, the government must show

24  by a preponderance of evidence that there was a lawful

25  alternative for discovering the evidence.  <u>United States v.</u>

26  <u>Ruckes</u>, 586 F.3d 713, 719 (9th Cir. 2009); <u>United States v.</u>

27  <u>Reilly</u>, 224 F.3d 986, 994 (9th Cir. 2000).

28  //

22

1    In this case, ICE took lawful means to obtain evidence from

2    LAPD through the issuance of an administrative subpoena and two

3    grand jury subpoenas, discussed further below.  (Exhibits E, F,

4    and G).  Hypothetically, if LAPD had not executed the warrant,

5    the documents in question would have remained with the 907 Club.

6    ICE would have then sought a federal search warrant to obtain

7    these documents.  (Declaration of Porter, at 5).  Additionally,

8    if LAPD had returned documents to the 907 Club, instead of

9    turning them over to ICE, ICE again would have applied for a

10   federal search warrant.  (Id.).[11]  ICE would have then obtained

11   the documents at issue.  Accordingly, the evitable discovery

12   exception to the exclusionary rule should apply in this case.

13   H.   LAPD OFFICERS PROPERLY TURNED OVER THE 907 CLUB MATERIALS TO

14        ICE PURSUANT TO ADMINISTRATIVE AND GRAND JURY SUBPOENAS

15        Defendants claim that, following a search of all materials

16   seized, LAPD was required to return these materials to the 907

17   Club.  (Defendant's motion at 10, 11).  Defendants also claim

18   that LAPD improperly turned over the materials to ICE.

19   (Defendant's motion at 32).  Defendants provide no authority in

20   support of this portion of their arguments.  In fact, relevant

21   case law indicates that LAPD properly turned over the materials

22   to ICE.

23        The Ninth Circuit has determined that "'once an item in an

24   individual's possession has been lawfully seized and searched,

25

26        [11]  By mid-December 2010, probable cause clearly existed to
     establish that the 907 Club hired and continued to employ illegal
27   aliens and that documents reflected such employment existed.  For
     a full discussion of this evidence, see Agent Porter's
28   declaration in support of the complaint and arrest warrants.

1  subsequent searches of that item, so long as it remains in the

2  legitimate uninterrupted possession of the police, may be

3  conducted without a warrant.'" United States v. Johnson, 820 F.2d

4  1065, 1072 (9th Cir. 1987) (quoting United States v. Burnette,

5  698 F.2d 1038, 1049 (9th Cir. 1983)).  Thus, once items are

6  seized, an individual could no longer reasonably expect that the

7  items would be free from further examination by law enforcement

8  officers, including officers from other law enforcement agencies.

9  Johnson, 820 F.2d at 1072.

10      In Hell's Angels Motorcycle Corp. v. McKinley, 360 F.3d 930

11  (9th Cir. 2004), the Ninth Circuit addressed a virtually

12  identical situation.  In McKinley, local law enforcement officers

13  executed a search warrant against a Hell's Angels clubhouse to

14  search for evidence relating to a murder and a robbery.  Id. at

15  931.  Even though two truck loads of property was seized, none of

16  it was used in a state prosecution.  Id.  After the search and

17  seizure, an FBI agent served an administrative subpoena on the

18  local authorities, and pursuant to this subpoena, certain items

19  were turned over to the FBI.  Id. at 931-32.

20      The Hell's Angels subsequently filed a Bivens action,

21  claiming, among other things, that 1) federal and local law

22  enforcement conspired to obtain an overly broad search warrant so

23  that the seized items could be turned over to the FBI, and 2) the

24  Hell's Angels were deprived of their property in violation of

25  their constitutional rights.  Id. at 932.  However, the Hell's

26  Angels did not challenge the legality of the initial search.  Id.

27  at 934.

28  //

24

1    In McKinley, the Ninth Circuit determined that "the Hell's
2    Angels' reasonable expectation of privacy in the documents was
3    substantially reduced by the lawful seizure of the documents by
4    [local law enforcement]." Id. (citing United States v. Holtzman,
5    871 F.2d 1496, 1505 (9th Cir. 1989), overruled on other grounds,
6    Horton v. California, 496 U.S. 128 (1990)).  Thus, the FBI's
7    subsequent search of the documents resulted in no constitutional
8    deprivation.  Id.

9    In this case, defendants claim that the LAPD search warrant
10   was a ruse and subterfuge to turn over documents to ICE.
11   (Defendants' motion at 32-33).  However, as discussed above,
12   LAPD's search of the 907 Club and seizure of documents was
13   appropriate.  The local search warrant was not a ruse or
14   subterfuge, because LAPD's investigation was valid and had an
15   independent basis.  See United States v. Washington, 797 F.2d
16   1461, 1470-71 (9th Cir. 1986).  Furthermore, given the decision
17   in McKinley, ICE was not barred from obtaining documentation from
18   the LAPD through the use of administrative and grand jury
19   subpoenas.
20   //
21   //
22
23
24
25
26
27
28

25

**IV.**

**CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court deny defendants' motion to suppress on the ground that defendants lack standing.  The government also respectfully requests that the Court deny the motion to suppress evidence seized from the 907 Club on substantive grounds.

DATED: September 20, 2011       Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
JAMES M. LEFT
Special Assistant United States
Attorney

Attorneys for Plaintiff
United States of America

26