# DECLARATION OF LEROI O'BRIEN

# DECLARATION OF LEROI O'BRIEN

1. I am a Police Officer with the Los Angeles Police Department ("LAPD"), and I have been so employed since May 1998. I am currently a patrol officer for the Central Division. From April 2009 to April 2011, I was assigned to the Central Area Vice Unit as a Vice Investigator.

2. During my employment with LAPD, I have investigated hundreds of crimes. I have conducted numerous crime scene investigations and interviewed witnesses and suspects involved in a variety of crimes. I have also been involved with numerous search warrants concerning various crimes. During my time as a Vice Investigator, I completed LAPD's 40-hour vice school, and I was a part of over 100 arrests of individuals for lewd acts and prostitution.

3. The following information concerns LAPD's investigation of the 907 Club, the search warrant executed against the club, the arrest of 77 female employees, and the seizure of evidence from the Club. All of the following is based upon what I personally witnessed or upon information provided to me by other LAPD officers.

4. On June 25, 2010, three LAPD officers conducted an investigation to determine whether the 907 Club was operating in compliance with its Conditional Use Permit. At that time, the officers discovered seven female employees who did not possess valid State of California identification cards or drivers licenses. Employing individuals without valid identification was a violation of the club's Conditional Use Permit, condition numbers 12 and 14.

1

5. The LAPD officers then spoke with the club's management, who provided copies of identification cards for various employees. These cards were not valid, because every number on the copies of the cards presented did not belong to the person listed on each card or was an invalid ID number.

6. On July 22, 2010, two undercover LAPD officers entered the 907 Club and encountered a female employee, who told the officers that lewd acts and prostitution occurred at the club. The employee also stated that these acts cost more than the normal hostess rate. Acts of prostitution were in violation of the club's Conditional Use Permit, conditions 14 and 15, and in violation of California state law.

7. On July 30, 2010, the same two undercover LAPD officers again entered the 907 Club, when the club was advertising the "Bikini Girls Show." Inside a male restroom, one officer found used condoms on the floor. The officers also observed two seated males receiving lap dances during the "Bikini Girls Show." The two men were allowed to digitally penetrate the dancer's vaginas. After the club's security staff collected money from these two men, two other men were allowed to digitally penetrate the women.

8. On July 30, 2010, one undercover officer observed male customers playing pool for money. The officer then played in a subsequent game and lost $20. This activity occurred within sight of the club's staff. This activity was also in violation of the club's Conditional Use Permit, condition number 14. On August 11, 2010, four undercover officers observed male customers gamble at the pool table, and one officer played a pool game for money. This activity also occurred within sight of the club's

staff. Undercover officers again witnessed illegal gambling at the pool tables within sight of the club's staff on August 20, 2010, and August 25, 2010.

9. On November 2, 2010, LAPD officers spoke with a Confidential Informant ("CI"). The CI stated that she was hired at the 907 Club and provided false identification upon a manager's request. While working at the club, the CI observed the "Bikini Girls Show." During the show, female dancers exposed their breasts and allowed male customers to digitally penetrate their vaginas. The club's security staff collected money from the men and gave it to the cashier.

10. Based upon all the foregoing, I filed an application for a search warrant. On November 2, 2010, a Superior Court judge issued the warrant based upon a finding of probable cause.

11. On November 5, 2010, LAPD officers, including myself, executed the search warrant against the 907 Club. Upon entry into the club, officers observed four female dancers wearing bikinis, and they were providing lap dances. This adult entertainment was in violation of the club's Conditional Use Permit, condition number 13. The security guards collected money from the patrons who received the lap dances, and defendant BAQUIAX managed the bikini show.

12. After the location was secured, LAPD officers began to check the female employees for valid identification. The officers also checked the employee applications on file for each employee, which contained photocopies of the identification documents used to secure employment. Out of approximately 85 female employees working at the 907 Club that evening, LAPD

3

determined that 19 women used false identification documents to obtain employment. LAPD also discovered that another 58 female employees possessed false identification cards, which were stored in their lockers. These 77 women were arrested and booked into LAPD custody.

13. LAPD seized and booked into evidence all the fraudulent identification cards, which included California identification cards, resident alien cards, social security cards, and Mexican identification cards.

14. At the same time as the female employees were interviewed, LAPD officers also found and seized numerous business records that were located in two offices of the 907 Club. These records included employment applications for female employees, payroll records, time cards, daily sales sheets, and bank records. LAPD also seized a computer that was located in one of the offices.

15. LAPD officers did not seize all the documents located in the two offices of the 907 Club. LAPD officer took about 75% of the documents, which concerned employment of the female hostesses and income generated for the 907 Club.

//
//

16. On February 15, 2011, I attended a hearing before the Superior Court. Subsequent to the hearing, the Superior Court judge ordered LAPD to release the 907 Club's documents to ICE. After this hearing, I personally authorized LAPD's Property Division to turn over the documents to ICE Special Agent Craig Porter.

I hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 20, 2011

LeRoi O'Brien