# DECLARATION OF CRAIG PORTER

**DECLARATION OF CRAIG PORTER**

1. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"). I am assigned to the Work Site Enforcement Unit of the Los Angeles district office. I have been a SA with ICE, and its predecessor agency, the Immigration and Naturalization Service ("INS"), since May 1988. As part of my employment with ICE and INS, I have received training in the investigation and prosecution of cases involving the unlawful employment of illegal aliens.

2. During the course of my employment with ICE, and INS, I have participated in numerous investigations concerning the unlawful hiring and employment of illegal aliens, which are violations of Title 8, United States Code, Sections 1324a(a)(1)(A), (a)(2), and (f)(1). I have also participated in many investigations in which search warrants and/or arrest warrants were executed in such cases.

3. I am the lead case agent concerning the case involving the 907 Club, which was a "hostess club" in downtown Los Angeles that generally catered to Latin American men. Customers paid to talk and dance with the club's hostesses, many of whom were illegal aliens. Defendants BAQUIAX and SOSA were two of the managers at the club.

4. The following information concerns pertinent portions of ICE's investigation regarding the 907 Club, the Los Angeles Police Department's ("LAPD") investigation regarding the club, interviews of many of the female employees, and the transfer of evidence from LAPD to ICE. All of the following is based upon

what I personally witnessed or upon information provided to me by other ICE agents and LAPD officers.

5. Between June 12, 2009, and September 14, 2009, ICE received five Form G-123s, reporting that the 907 Club hires illegal aliens and that prostitution takes place at the club. As result of this information, ICE decided to investigate as to whether the club hired and continued to employ illegal aliens.

6. On September 8, 2010, a female Confidential Informant ("CI") sought employment at the 907 Club. The CI spoke with Fernanda Herrera, an assistant manager. The CI applied for employment with identification cards that Herrera knew were fraudulent. Herrera hired the CI anyway.

7. On September 10, 2010, the CI went to the 907 Club. On this occasion, the CI met SOSA, and the CI showed SOSA a fraudulent California drivers license. The CI also told SOSA that she had previously shown Herrera her other fraudulent documents. Even though the CI did not possess valid identification, SOSA allowed the CI to work at the club anyway.

8. On October 25, 2010, the CI again went to the 907 Club, and she presented fraudulent identification documents to SOSA. SOSA hired the CI even though SOSA knew that the documents were not genuine.

9. I was also informed that on June 25, 2010, three LAPD officers discovered seven female employees who did not possess valid State of California identification cards or drivers licenses. The LAPD officers then spoke with the club's management, who provided copies of identification cards for various employees. These cards were not valid, because every

1 number on the copies of the cards presented did not belong to the
2 person listed on each card.
3     10. On November 5, 2010, LAPD officers executed a search
4 warrant against the 907 Club. After the location was secured,
5 LAPD officers began to check the female employees for valid
6 identification. The officers discovered that 19 women working at
7 the club that evening used false identification documents to
8 obtain employment. LAPD also discovered that another 58 female
9 employees possessed false identification cards, which were stored
10 in their lockers. These 77 women were arrested and booked into
11 LAPD custody.
12     11. LAPD seized and booked into evidence all the fraudulent
13 identification cards, which included California identification
14 cards, resident alien cards, social security cards, and Mexican
15 identification cards. LAPD officers also found and seized
16 numerous business records that were located in two offices of the
17 907 Club. These records included 834 employment applications,
18 payroll records, time cards, daily sales sheets, and bank
19 records. LAPD also seized a computer that was located in one of
20 the offices.
21     12. The employment applications contained copies of
22 California identification cards, some of which were fraudulent on
23 their face. ICE Investigative Assistant Wanda Bradley and I
24 recently checked the numbers on the identification cards against
25 the California Department of Motor Vehicles database. These
26 checks revealed that 269 numbers appeared valid, but 358 numbers
27 did not exist or matched the names of other persons.
28 //

3

13. On November 6, 2010, other ICE Special Agents and I interviewed many female employees of the 907 Club, who were then in the custody of the LAPD. Additional interviews were later conducted through January 2011. In total, ICE interviewed about 75 female employees. About 42 of these employees stated that either BAQUIAX, SOSA, Herrera, or Jose Quiroz hired them to work at the 907 Club even though they knew that these women were illegal aliens who did not have authorization to work in the United States. About 20 women stated that BAQUIAX hired them, and another 9 women stated that SOSA hired them.

14. On December 2, 2010, LAPD officers went to the 907 Club and found four employees working without valid California identification cards. As with the other women who were arrested on November 5, 2010, it appears that these four women were illegal aliens who did not have authorization to work in the United States.

15. On November 8, 2010, ICE issued an administrative subpoena to LAPD, requesting the Form I-9s concerning the club's employees. On December 23, 2010, a grand jury subpoena was issued on behalf of ICE, requesting that LAPD produce copies of identification cards seized during the execution of the search warrant. The subpoena also requested that the LAPD produce copies of its reports concerning the execution of the search warrant and arrest of any employees. On February 2, 2011, a second grand jury subpoena was issued on behalf of ICE. This subpoena requested that LAPD produce evidence seized at the 907 Club, including identification cards, employee records, and computers.

16. On February 15, 2011, I attended the hearing before the Superior Court. Subsequent to the hearing, the Superior Court judge ordered LAPD to release the 907 Club's documents to ICE. After this hearing, LAPD Officer LeRoi O'Brien authorized the release of the documents from the LAPD Property Division to me.

17. If LAPD had allowed the documents in question to remain with the 907 Club, ICE would have then sought a federal search warrant to obtain these documents. Likewise, if LAPD had returned documents to the 907 Club, instead of turning them over to ICE, ICE would have applied for a federal search warrant.

18. Between June 30, 2011, and August 25, 2011, ICE Special Agents and Special Assistant United States Attorney James Left conducted interviews with about 24 female employees who worked at the 907 Club. During these interviews, the women stated, in part, that defendants BAQUIAX and SOSA did not have exclusive use of the two offices at the club. The female employees instead stated that four managers, including both defendants, shared the offices. The women also stated that they saw employees and customers frequently enter these offices. The women further gave the indication that Michelle Hutchinson, one of the owners of the 907 Club, used these offices.

I hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 20, 2011

_____
Craig Porter