# EXHIBIT B

MICHAEL LOGRANDE
CHIEF ZONING ADMINISTRATOR

ASSOCIATE ZONING ADMINISTRATORS
CARY BOOHER
PATRICIA BROWN
R. NICOLAS BROWN
SUE CHANG
ANIK CHARRON
LARRY FRIEDMAN
DANIEL GREEN
LOURDES GREEN
ERIC RITTER
MICHAEL S.Y. YOUNG

**CITY OF LOS ANGELES**
CALIFORNIA



ANTONIO R. VILLARAIGOSA
MAYOR

DEPARTMENT OF
CITY PLANNING

S. GAIL GOLDBERG, AICP
DIRECTOR
—
OFFICE OF
ZONING ADMINISTRATION
200 N. SPRING STREET, 7TH FLOOR
LOS ANGELES, CA 90012
(213) 978-1318
FAX: (213) 978-1334
www.lacity.org/PLN

June 8, 2007

Michelle Hutchinson (A)
Goliath, Inc.
907 South Hill Street
Los Angeles, CA 90015

Michden Impossible LLC (O)
907 South Hill Street
Los Angeles, CA 90015

Wayne Avrashow, Esq. (R)
16133 Ventura Boulevard, Suite 920
Encino, CA 91436

CASE NO. ZA 2006-10073(ZV)
ZONE VARIANCE
907 South Hill Street
Central City Planning Area
Zone : [Q]R5-4D
D. M. : 127.5A209
C. D. : 9
CEQA : ENV-2006-1007-MND
Fish and Game : Exempt
Legal Description : Lots 1-2,
Ord's Survey

Department of Building and Safety

Pursuant to Charter Section 562 and Los Angeles Municipal Code Section 12.27-B, I hereby <u>APPROVE</u>:

> a variance from Los Angeles Municipal Code Section 12.12-A to permit the continued use and maintenance of a hostess dance hall use as not otherwise allowed in the [Q]R5 Zone,

upon the following additional terms and conditions:

1. All other use, height and area regulations of the Municipal Code and all other applicable government/regulatory agencies shall be strictly complied with in the development and use of the property, except as such regulations are herein specifically varied or required.

2. The use and development of the property shall be in substantial conformance with the plot plan submitted with the application and marked Exhibit "A", except as may be revised as a result of this action.

3. The authorized use shall be conducted at all times with due regard for the character of the surrounding district, and the right is reserved to the Zoning Administrator to impose additional corrective Conditions, if, in the Administrator's opinion, such Conditions are proven necessary for the protection of persons in the neighborhood or occupants of adjacent property.

AN EQUAL EMPLOYMENT OPPORTUNITY – AFFIRMATIVE ACTION EMPLOYER   Recyclable and made from recycled waste.

CASE NO. ZA 2006-10073(ZV)                                                    PAGE 2

4.   All graffiti on the site shall be removed or painted over to match the color of the surface to which it is applied within 24 hours of its occurrence.

5.   A copy of the first page of this grant and all Conditions and/or any subsequent appeal of this grant and its resultant Conditions and/or letters of clarification shall be printed on any application submitted to the Zoning Administrator or any other public agency for purposes of having a license or any permit issued.

6.   The dance hall use shall not exceed 7,450 square feet of floor area.

7.   A maximum of four billiard tables are permitted.

8.   Occupancy shall not exceed 250 persons.

9.   The operation of the hostess dance hall shall be in compliance with Municipal Code Section 103.106.1, and the Board Rules of the Los Angeles Board of Police Commissioners governing hostess dance halls.

10.  The consumption of alcoholic beverages is prohibited within the dance hall and in the associated parking areas.

11.  A valid dance hall Police permit shall be maintained and displayed in the dance hall.

12.  Employees shall have a valid California Identification or California Driver's License at all times while on the premises.

13.  Uses subject to the provisions of Section 12.70 of the Municipal Code ["Adult Entertainment Zoning"] are prohibited.

14.  The applicant shall implement the following voluntary measures in order to prevent narcotic sales, use or possession; alcoholic beverage consumption; gambling; loitering; prostitution, or any other illegal or disruptive conduct on any property controlled by the applicant and which is used in conjunction with the hostess dance hall, as well as from all common and public areas immediately adjacent to the use:

   a.   All employees shall bring California identification or they will be unable to work.

   b.   Any employee arriving to work intoxicated will be sent home; if she brings alcoholic beverages or narcotics to work, she will be fired.

   c.   Drug use is prohibited. Anyone using drugs will be fired.

   d.   Demanding or accepting money for sexual favors will not be tolerated in the club. If caught doing so, the employee will be fired.

   e.   Gambling is prohibited.

   f.   No hostess will be allowed in the DJ booth, or alone on the dance floor and seating area.

06668

CASE NO. ZA 2006-10073(ZV)

15. No person shall be hired or employed or allowed on the premises for the purpose of soliciting any patron or customer to purchase sexual favors either at the subject property and associated parking lots or elsewhere.

16. The business operator shall not allow patrons to provide their own alcoholic beverages nor shall the applicant make available "set-ups" of glasses or mixers or ice for the consumption of alcoholic beverages.

17. Entertainment and music from within the premises shall not be audible beyond the premises.

18. No areas shall be partitioned off in such a manner as to provide concealment or private seating or gathering that would prevent the area from being monitored. No VIP or hospitality alcoves shall be constructed on the premises.

19. Interior lighting shall be sufficient so as to render objects or persons clearly visible.

20. Off-site advertising shall not be affixed to public utility poles or rights-of-way, walls, pillars or any other type of property not specifically designed for the purpose of advertising.

21. Trash, debris and litter shall be removed from the associated parking areas as well as from all common and public areas immediately adjacent to the property on a daily basis.

22. The business operator shall not sell time for off-premises activities of hostess dancers or permit any on-duty hostess dancers to rendezvous with patrons off-site.

23. The business operator shall employ at least three State-licensed uniformed security guards from a reputable agency (not including off-duty Los Angeles Police officers), one of whom shall be employed from at least 30 minutes prior to opening to 30 minutes after closing. One guard shall be posted at the entrance, one guard shall be posted within the dance hall and one guard shall be rove among each of the associated parking areas.

24. If an entrance fee is charged, no patron may leave the premises and re-enter without paying another entrance fee.

25. Hours of operation are restricted as follows:

   a. Noon to 6 p.m. with an occupancy limit of 40 persons, and
   b. 6 p.m. to 2 a.m. with an occupancy limit of 250 persons.
   c. At all other times, the dance hall shall be closed.

26. Validated customer/employee parking shall be secured by the business operator at locations within 750 feet of the site to the satisfaction of the Zoning Administrator through non-cancelable leases for minimum one-year terms. The lessor(s) shall state in the lease(s) that 186 parking spaces are available and that such spaces are not and will not be committed to any other lessee between the hours of 6 p.m. to 2 a.m., daily. The lessor(s) shall also state in the lease(s) that 40 parking spaces are available and that such spaces are not and will not be committed to any other lessee between the hours of noon and 6 p.m., daily. Any change or cancellation of

CASE NO. ZA 2006-10073(ZV)                                                    PAGE 4

a lease shall be reported immediately by the business operator to the Zoning Administrator and new leases provided.

27.   The business owner shall install and maintain security cameras operating during all business hours. The cameras shall show all common areas of the use, all high-risk areas, and all entrances and exits to the written satisfaction of the Police Department. An additional camera shall record during all hours the view of the wall along 9th Street where graffiti has been observed. All recorded video shall be retained a minimum of 10 days and shall be made available to the Police Department on VHS, DVR, or similar media upon request.

28.   A copy of these Conditions, the business permit, insurance information, any required Police permit, and valid emergency contact phone numbers for any security company and valet parking services shall be retained on the premises at all times and shall be made available to any Police Officer upon request.

29.   The term of this grant is for 10 years from the effective date of this determination.

30.   Within 30 days of the effective date of this determination, a covenant acknowledging and agreeing to comply with all the terms and conditions established herein shall be recorded in the County Recorder's Office. The agreement (standard master covenant and agreement form CP-6770) shall run with the land and shall be binding on any subsequent owners, heirs or assigns. The agreement with the conditions attached must be submitted to the Zoning Administrator for approval before being recorded. After recordation, a certified copy bearing the Recorder's number and date shall be provided to the Zoning Administrator for attachment to the subject case file.

## OBSERVANCE OF CONDITIONS - TIME LIMIT - LAPSE OF PRIVILEGES - TIME EXTENSION

All terms and Conditions of the approval shall be fulfilled before the use may be established. The instant authorization is further conditional upon the privileges being utilized within two years after the effective date of approval and, if such privileges are not utilized or substantial physical construction work is not begun within said time and carried on diligently to completion, the authorization shall terminate and become void. A Zoning Administrator may extend the termination date for one additional period not to exceed one year, if a written request on appropriate forms, accompanied by the applicable fee is filed therefore with a public Office of the Department of City Planning setting forth the reasons for said request and a Zoning Administrator determines that good and reasonable cause exists therefore.

## TRANSFERABILITY

This authorization runs with the land. In the event the property is to be sold, leased, rented or occupied by any person or corporation other than yourself, it is incumbent upon you to advise them regarding the Conditions of this grant.

## VIOLATIONS OF THESE CONDITIONS, A MISDEMEANOR

Section 12.29 of the Los Angeles Municipal Code provides:

CASE NO. ZA 2006-10073(ZV)                                            PAGE 5

"A variance, conditional use, adjustment, public benefit or other quasi-judicial approval, or any conditional approval granted by the Director, pursuant to the authority of this chapter shall become effective upon utilization of any portion of the privilege, and the owner and applicant shall immediately comply with its conditions. The violation of any valid condition imposed by the Director, Zoning Administrator, Area Planning Commission, City Planning Commission or City Council in connection with the granting of any action taken pursuant to the authority of this chapter, shall constitute a violation of this chapter and shall be subject to the same penalties as any other violation of this Code."

Every violation of this determination is punishable as a misdemeanor and shall be punishable by a fine of not more than $1,000 or by imprisonment in the county jail for a period of not more than six months, or by both such fine and imprisonment.

## APPEAL PERIOD - EFFECTIVE DATE

The applicant's attention is called to the fact that this variance is not a permit or license and that any permits and licenses required by law must be obtained from the proper public agency. Furthermore, if any Condition of this grant is violated or not complied with, then this variance shall be subject to revocation as provided in Section 12.27 of the Municipal Code. The Zoning Administrator's determination in this matter will become effective after JUNE 25, 2007, unless an appeal therefrom is filed with the City Planning Department. It is strongly advised that appeals be filed early during the appeal period and in person so that imperfections/incompleteness may be corrected before the appeal period expires. Any appeal must be filed on the prescribed forms, accompanied by the required fee, a copy of the Zoning Administrator's action, and received and receipted at a public office of the Department of City Planning on or before the above date or the appeal will not be accepted. Forms are available on-line at www.lacity.org/pln. Public offices are located at:

Figueroa Plaza                          Marvin Braude San Fernando
201 North Figueroa Street,                 Valley Constituent Service Center
     4th Floor                          6262 Van Nuys Boulevard, Room 251
Los Angeles, CA  90012                  Van Nuys, CA  91401
(213) 482-7077                          (818) 374-5050

If you seek judicial review of any decision of the City pursuant to California Code of Civil Procedure Section 1094.5, the petition for writ of mandate pursuant to that section must be filed no later than the 90th day following the date on which the City's decision became final pursuant to California Code of Civil Procedure Section 1094.6. There may be other time limits which also affect your ability to seek judicial review.

## NOTICE

The applicant is further advised that all subsequent contact with this office regarding this determination must be with the Zoning Administrator who acted on the case. This would include clarification, verification of Condition compliance and plans or building permit applications, etc., and shall be accomplished BY APPOINTMENT ONLY, in order to assure that you receive service with a minimum amount of waiting. You should advise any consultant representing you of this requirement as well.

06671

CASE NO. ZA 2006-10073(ZV)

## INDEMNIFICATION

The applicant shall defend, indemnify and hold harmless the City, its agents, officers, or employees from any claim, action, or proceeding against the City or its agents, officers, or employees to attack, set aside, void or annul this approval which action is brought within the applicable limitation period. The City shall promptly notify the applicant of any claim, action, or proceeding and the City shall cooperate fully in the defense. If the City fails to promptly notify the applicant of any claim action or proceeding, or if the City fails to cooperate fully in the defense, the applicant shall not thereafter be responsible to defend, indemnify, or hold harmless the City.

## FINDINGS OF FACT

After thorough consideration of the statements contained in the application, the plans submitted therewith, the report of the Zoning Analyst thereon, the statements made at the public hearing on May 15, 2007, all of which are by reference made a part hereof, as well as knowledge of the property and surrounding district, I find that the five requirements and prerequisites for granting a variance as enumerated in Section 562 of the City Charter and Section 12.27-B,1 of the Municipal Code have been established by the following facts:

## BACKGROUND

The property is a level, rectangular, corner, parcel of land consisting of two record lots, totaling approximately 0.33 acres, having a frontage of 95 feet on the northwesterly side of Hill Street and a frontage of 149 feet on the southwesterly side of 9th Street.

Property to the north of 9th Street is zoned [Q]R5-4D and is developed with a 12-story office building. Properties diagonally to the northeast across the intersection of Hill Street and 9th Street are zoned C5-4D and are improved with a surface parking lot. Properties to the east, across Hill Street, are zoned [Q]R5-4D and area improved with a vacant four-story commercial building undergoing rehabilitation with a restaurant on the ground floor. Properties to the south are zoned [Q]R5-4D and are improved with a vacant two-story commercial building. Properties to the west, across an alley, are zoned [Q]R5-4D and are improved with a 12-story office building with ground floor commercial uses including Club Galaxy - 100 Beautiful Girls.

Hill Street, adjoining the property to the southeast, is a designated Secondary Highway dedicated a width of 92 feet and is improved.

9th Street, adjoining the property to the northeast, is a designated Secondary Highway dedicated a width of 70 feet and is improved.

The alley, known as Midway Place, adjoining the property to the northwest, is a through alley and is improved with asphalt pavement and concrete gutter within a 20-foot wide dedication.

Previous zoning related actions on the site include:

Case No. ZA 99-0537(ZV) - On November 29, 1999, the Zoning Administrator approved a variance to permit the continued use of a hostess dance hall with four billiard tables for seven years, and a reduction in the number of security personnel required from three to one.

CASE NO. ZA 2006-10073(ZV)                                            PAGE 7.

Building Permit No. 96016-10000-04157 - On March 29, 1999, a permit was finaled to include a food establishment in an existing nightclub.

Case No. ZA 96-0434(ZV) - On August 2, 1996, the Zoning Administrator approved a variance to permit an existing hostess dance hall to operate during extended hours, and to permit an extension of the term of the grant of Case No. ZA 94-0485(ZV).  Case No. BZA 5304 - On November 27, 1996, the Board of Zoning Appeals determined that the Zoning Administrator erred in extending the term of the grant.

Case No. ZA 94-0485(ZV) - On September 21, 1994, the Zoning Administrator approved the continued use of a hostess dance hall with three pool tables.

Case No. ZA 92-0302(ZV) - On June 17, 1992, the Zoning Administrator approved the continued use of a hostess dance hall and addition of three pool tables.

Case No. ZA 88-0665(CUX) - On June 24, 1988, the Zoning Administrator approved the continued use of a hostess dance hall.

Case No. ZA 87-0188(CUX) - On April 27, 1987, the Zoning Administrator approved a variance for the establishment of a hostess dance hall.

Case No. ZA 86-1387(ZV) - On March 30, 1987, the Zoning Administrator approved a variance to permit a garment manufacturing business on the second floor of the subject building, with no parking.

Case No. ZA 84-0906(CUZ)(ZV) - On March 28, 1985, the Zoning Administrator approved a conditional use for the conversion of the second floor of the subject building to five joint live-work quarters with existing yards and no on-site parking, and approved a variance to permit apparel sewing and tailoring on the second floor of the subject building with no on-site parking.

## Public Hearing

On May 15, 2007, at 9:30 a.m., the Zoning Administrator conducted a public hearing regarding this matter at City Hall, Room 1020. After explaining the procedures to be followed during the course of the hearing, the Zoning Administrator opened the hearing to public testimony.

Speaking first was Wayne Avrashow, representative for applicant.  He testified that the business has operated since 1987 without any criminal impacts to his knowledge.  The applicant proposes no relaxation of current Conditions; the request is simply to extend the privileges another 10 years.  The owner hired additional guards as indicated in a letter from a registered security guard company.  There has always been a guard stationed at the Hill Street entrance during all business hours.  No alcohol is served inside, just snacks and sodas.  The Municipal Code requires 74 parking spaces for this use.  The owner maintains leases for off-site parking, and the owner acknowledges that there has been a dispute as to a previous lease.  The business has a new agreement for parking located within 750 feet of the business:  924, and 948-962 South Olive Street, 919 South Broadway, and 833 South Hill Street. The business owner stated that she operates a van to shuttle employees home at night upon request.  She spoke with the Police Department

06673

which identified no complaints of past practice. The local neighborhood council met at the property and is not opposed. The building tenants on the ground support the request. The building has been rehabilitated. The case file contains letters of support from other business operators. The use provides a social benefit to a large population. The C5 zoning of the site was changed years ago to R5 under the General Plan/Zoning Consistency Program (AB283). None of the adjacent uses are residential. Most surrounding land is either improved with surface parking or vacant buildings.

Ruth Ann Rohman, owner of an adjacent parking lot who also submitted a letter, stated that there has been an increase in graffiti on her lot, identified as Ownership 15 on the radius map. The lot is striped for 72 parking spaces. The application claims the lot accommodates 214 spaces. She has no lease for parking with the applicant. She has never seen a security guard at night on the off-site parking lot as required by the Conditions. She has seen patrons of Galaxy (902 South Olive Street) using the same lot. It uses 937 South Olive Street for parking. The owner of the abutting lot to Ownership 15, Mr. Needleman, removed fences separating her lot from his, thereby enabling others entering his lot to park on her lot. Midway Place is the name of the rear alley. Goliath continues to use the Needleman/Rohman properties. As of June 1, 2007, this will terminate. She has apprised the applicant of this matter on April 30, 2007.

Michelle Hutchison, the owner of the applicant business and property, recounted that she obtained an agreement with Jeff Lumer for parking. Some patrons park at the Grant parking lot. Two guards are stationed in the parking lot on weekends, and one guard is stationed there during each week day. The dance hall patrons are primarily between 35 and 50 years of age. The attendant at Joe's parking lot sweeps that property at 6 a.m. every morning.

Brandy Chappelle, appearing on behalf of Councilmember Jan Perry of the Ninth District, requested that the Zoning Administrator keep the case file open in order to incorporate concerns she understands are held by the Central Police Division and suggested that the Zoning Administrator contact Sergeant Walker.

The applicant offered to keep the matter under advisement for two weeks, which the Zoning Administrator accepted.

On May 17, the Zoning Administrator received a letter indicating that the Los Angeles Police Department "is unopposed to the issuance of this license" subject to a list of 25 proposed Conditions from Andrew Smith, Captain and Commanding Officer of the Central Division.

On May 23, the Zoning Administrator received from Michelle Hutchison several items. Her cover letter clarifies that she terminated her lease with Grant Parking over four years ago, a site now experiencing gang problems according to the Police Department. A small amount of graffiti on the alley wall was recently removed. Sergeant Walker suggested she install a surveillance camera on that wall with the hope that it will record the identity of the graffiti tagger(s). Also included in this package of materials was a diagram showing her new parking spaces, an addendum to the parking lease carrying forward 24 additional months, a color coded map with the names of the different parking companies on the lots they operate, support letters, the security company agreement, email correspondence with the Police Department, and the certificate of occupancy for the business.

CASE NO. ZA 2006-10073(ZV)                                                    PAGE 9

(The parking lease did not reserve any parking spaces for this use but merely allows the lessee to enter upon and use for parking purposes on any of four lots in the vicinity with a capacity of 186 spaces. The "Map Plan" showing off-site parking locations includes a chart showing not 186 spaces but rather 219 spaces at four lots.)

On May 24, the Zoning Administrator received correspondence from Sergeant Walker advising that he met with the applicant who voluntarily accepted written Conditions proposed by the Police Department.

The Zoning Administrator contacted Ms. Hutchison on May 31 seeking confirmation or clarification that no specific parking spaces are held specifically in her name or the business name. The certificate of occupancy was issued on August 10, 1993, identifying a dance hall use and the requirement and provision of 186 parking spaces but does not identify where those 186 are located. The most recently issued tax registration certificate for dance hall was issued December 9, 2005, and remains valid.

On June 1, 2007, Ms. Hutchison responded to the Zoning Administrator by providing a copy of the original parking agreement with L & R, the amendment to that agreement, and last month's billing statement from L & R. The lessor, also on June 1, submitted a revised agreement inserting then word "exclusive" in front of the word "right".

## MANDATED FINDINGS

In order for a variance to be granted, all five of the legally mandated findings delineated in City Charter Section 562 and Municipal Code Section 12.27 must be made in the affirmative. Following (highlighted) is a delineation of the findings and the application of the relevant facts of the case to same:

1.  **The strict application of the provisions of the Zoning Ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the zoning regulations.**

    The applicant has operated the 907 Club, a Hostess Dance Hall, located at 907 South Hill Street, since April 1987. Previous variance authorizations have allowed the operation of the existing use for short, defined time periods. During that 20-year period of time, the applicant has substantially complied with the requirements of those previous entitlements. The continuance of the existing use and the issuance of a 10-year term grant - the only change requested, will prevent financial hardship to the applicant by allowing it the opportunity to maintain a substantial capital investment and the recurring costs of periodic zone variance applications, which is the only means by which the applicant may continue the existing use. Denial of the application would be arbitrary in light of the lack of associated criminal activity or violation of Conditions.

2.  **There are special circumstances applicable to the subject property such as size, shape, topography, location or surroundings that do not apply generally to other property in the same zone and vicinity.**

    The unique feature about the property is the long-standing dance hall use and six previous approvals permitting its 20-year ongoing operation. There are no other uses in the same zone and vicinity with such a long history of continuous requests and approvals. The short term grants were each intended to be able to monitor the

CASE NO. ZA 2006-10073(ZV)

dance hall use in light of changes in surrounding uses and concern about possible criminal activity. The Police Department once again has reported that it has no opposition to the request, that the applicant is willing to abide by Conditions suggested by the Police Department, and that there is no associated criminal concern based upon the history of the use. There has been some rehabilitation of nearby buildings, including the former Federal Reserve Bank building, which suggests that the ongoing dance hall use is not an economic concern of those developers. A map provided by the applicant subsequent to the public hearing illustrates in pink and yellow colors the locations of vacant buildings (five of them) within 500 feet of the site, and a large number of lots (38) which are used as surface parking lots open to the general public, further indicating that the use is well buffered by distance from any sensitive uses.

Most commercial uses in the immediate area were established by right. The City-initiated zone changes promulgated under AB 283 provided these uses with nonconforming use status which allows their long term continuation without the imposition of a discretionary process.

This establishment is located on the second floor of the building, resulting in minimal impact to the street and adjacent commercial uses. Although the surrounding area is zoned [Q]R5-4-D none of the adjoining properties have been developed for residential uses. Furthermore, the existing building is not well suited to residential uses, due to its construction type and configuration. The conversion of this structure to a residential use does not appear to be commercially viable.

One primary reason this use has not experienced problems associated with some other dance halls is that alcohol is not served on the premises and security personnel are present to prevent intoxicated persons from entering the premises or causing disturbance on the street. Furthermore, the clientele is generally older and not disposed to causing disturbances.

3. Such variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by other property in the same zone and vicinity but which, because of such special circumstances and practical difficulties or unnecessary hardships, is denied the property in question.

None of the adjoining properties, while identically zoned for approximately 20 years, have been developed for residential uses. There is no indication that abutting residential use would be impacted by the dance hall. In fact, several alcohol licenses have been approved in the Downtown area in the past several years as a convenience to the increasing number of residents living there and both resident and commercial interests have supported those applications. The commercial use of this establishment, as conditioned, is not out of character with surrounding commercial uses. Denial of the applicant's request would require the termination of a hostess dance hall with a criminal-free track record of 20 years. There was no evidence at the May 15, 2007, public hearing demonstrating gross negligence or failure to comply with the Conditions of approval currently in effect. The location is highly accessible on a major street with public transportation and abundant public parking availability. To deny the request in spite of its admirable track record would be capricious.

CASE NO. ZA 2006-10073(ZV)                                          PAGE 11

4.     The granting of such variance will not be materially detrimental to the public
       welfare or injurious to the property or improvements in the same zone or
       vicinity in which the property is located.

       The applicant has been operating this use for 20 years without incident.  Potential
       problems have been mitigated by adherence to the previous Conditions and by a
       conscientious management.  The establishment has not been a source of law
       enforcement problems.

       No new construction will result from this grant, so there will be no inconvenience to
       traffic, no dust, no noise, nor other environmental pollution.

       This establishment is located on the second floor of the building, resulting in
       minimal impact on the street and adjacent uses. The applicant has arranged with
       local parking concessionaires to provide parking for all persons utilizing the
       establishment and will continue to provide security personnel to assure their safety
       as well as the safety of the public.

       This establishment has benefited the neighborhood by providing security guards in
       the evening, thereby discouraging vagrancy, loitering and anti-social behavior on
       the street.  The establishment does not serve alcohol or permit intoxicated persons
       to enter the premises.  It employs 150 persons.

5.     The granting of the variance will not adversely affect any element of the
       General Plan.

       The hostess dance hall is located in the Los Angeles Central City Plan, a
       component of the Land Use Element of the General Plan. The Los Angeles Central
       City Plan designates the property for High Density Residential land uses with a
       corresponding zone of R5 and Height District No. 2 by right and Height District No.
       4 through a transfer of floor area.  The property is not within the area of any specific
       plan or interim control ordinance.

       The use provides employment for 150 people; resulting in economic benefit to an
       otherwise under-utilized portion of the Central City.  In addition, it provides evening
       entertainment activities in a portion of the Central City where evening activities are
       otherwise lacking. This thereby discourages nighttime vagrancy and loitering. The
       use promotes some afternoon but primarily evening entertainment opportunities in
       the community, thereby adding to the diversity of Downtown, and provides
       economic use  to the second floor of an old, two-story building for a reasonable
       time period.

ADDITIONAL MANDATORY FINDINGS

6.     The National Flood Insurance Program rate maps, which are a part of the Flood
       Hazard Management Specific Plan adopted by the City Council by Ordinance No.
       172,081, have been reviewed and it has been determined that this project is
       located in Zone C, areas of minimal flooding.

7.     On April 25, 2007, a Mitigated Negative Declaration (ENV 2006-10074-MND) was
       prepared for the proposed project.  On the basis of the whole of the record before
       the lead agency including any comments received, the lead agency finds that with

CASE NO. ZA 2006-10073(ZV)                                            PAGE 12

imposition of the mitigation measures described in the MND (and identified in this determination), there is no substantial evidence that the proposed project will have a significant effect on the environment. I hereby adopt that action. This Mitigated Negative Declaration reflects the lead agency's independent judgment and analysis. The records upon which this decision is based are with the Environmental Review Section of the Planning Department in Room 750, 200 North Spring Street.

8.    Fish and Game: The subject project, which is located in Los Angeles County, will not have an impact on fish or wildlife resources or habitat upon which fish and wildlife depend, as defined by California Fish and Game Code Section 711.2.


DANIEL GREEN
Associate Zoning Administrator
Direct Telephone No. (213) 978-1304

DG:lmc

cc:    Councilmember Jan Perry
        Ninth District
        Adjoining Property Owners
        County Assessor

06678